IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Brief September 12, 2006

## STATE OF TENNESSEE v. MICHAEL DEWAYNE MANN

**Appeal from the Circuit Court for Dyer County**
**No. C05-187    Lee Moore, Judge**

_____

**No. W2006-00246-CCA-R3-CD  - Filed October 13, 2006**

_____

The appellant, Michael Dewayne Mann, was convicted of second offense driving under the influence (DUI) and violation of the implied consent law.  As a result, the appellant was sentenced to eleven months and twenty-nine days in the county jail, to be served on unsupervised probation after incarceration of ninety days.  After the denial of a motion for new trial, this appeal ensued.  The appellant challenges the sufficiency of the evidence on appeal.  Because the evidence was sufficient to sustain the appellant's conviction for second offense driving under the influence and the appellant does not challenge his conviction for violation of the implied consent law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Jim W. Horner, District Public Defender and Patrick McGill, Assistant District Public Defender, for the appellant, Michael Dewayne Mann.

Paul G. Summers, Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; and Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The appellant was indicted by the Dyer County Grand Jury in June of 2005 for driving under the influence (DUI), second offense, and violation of the implied consent law.

At trial, Officer Stan Langley testified that he has been with the Dyersburg Police Department for nine years and has DUI training.  On February 6, 2005, Officer Langley was on duty and was in the area outside the American Legion talking to Officer Sterling Wright when he saw a car sideswipe

another car that was sitting backed up in traffic. According to Officer Langley and Officer Wright, the car coming towards them was driven by the appellant, and it did not stop at the point of the accident. At that point, Officer Langley yelled at the appellant and instructed him to stop his vehicle, even hitting the appellant's window with his hand to get his attention. The appellant drove past the officers prior to pulling over.

The appellant pulled over in a no parking zone in an area where there was a ditch on the side of the road. When the car came to a stop, it was leaning slightly. Officer Langley and Officer Wright noted that there was damage to the appellant's car on the driver's side. The appellant was the only person in the car. When the appellant tried to get out of the car, Officer Langley stated that the appellant had to grab hold of the door to stand up and then leaned up against the car for support. Officer Wright stated that the appellant stumbled as he exited the vehicle. As Officer Langley and Officer Wright approached the appellant, they noticed a strong odor of alcohol. Officer Wright stated that the appellant's breath smelled like a mixture of alcohol and vomit.

Officer Langley stated that the appellant's pants were wet below his waist area, and the inside of the car was also wet. When Officer Langley looked around inside the car, he discovered a Heineken beer bottle that looked like it had spilled, leaving about one to two inches of beer in the bottle. Officer Langley observed that the appellant's speech was slurred. In fact, Officer Langley actually had to ask the appellant to repeat himself several times. There were no field sobriety tasks performed due to the amount of traffic in the area. Officer Langley was actually concerned for the safety of the appellant and himself. The appellant reported to Officer Langley that he was drinking some beer in the American Legion and also drank some beer in the car.

At that point, Officer Langley and Officer Wright transported the appellant to the police department. The appellant began crying in the car on the way to the police department. The appellant was given the implied consent form, and Officer Wright read the form to the appellant twice. The appellant asked for guidance from Officer Wright and Officer Langley, who told the appellant that they could not tell him whether he should take the test. The appellant initialed the form in four places, initially consenting to the test. The officers gave the appellant two chances to blow into the hose on the machine, but the appellant was crying the entire time. The appellant eventually decided not to take the test, so he scratched out his initials on the form and checked the box indicating that he would not take the test.

According to Officer Langley, the appellant had to be held up by the officers at the fingerprint machine, making it difficult for the officers to get a proper fingerprint on the appellant. The appellant slumped down and caused the machine to actually erase everything that had been completed up to that point. Officer Langley stated that the appellant was "sobbing" at this point and could not possibly operate a motor vehicle or even walk safely. Officer Langley felt that if he saw the appellant walking down the street, he would have arrested him for public intoxication because he felt that the appellant was a danger to himself. Both officers testified that there were no photographs, videotape, or audiotape of the incident.

The appellant's father, Eddie Joe Mann, stated that he, his daughter and his niece went to the scene of the accident and that the appellant was still sitting inside the car when they arrived. He was told by the officers that he could come and get the appellant at the police station after he was processed. Mr. Mann saw the appellant walking to the patrol car by himself with the officers on each side. Mr. Mann stated that at the police station, he did not see the appellant stagger or stumble. Mr. Mann took the appellant home later that night, and felt that the appellant was talking normally.

The appellant's sister, Vercille Lashon Mann, also went to the scene of the accident. When she arrived, she saw the appellant sitting in his car. When the appellant got out of the car, he spoke to their father and walked to the police car normally. Ms. Mann took pictures of the car on the day of the trial, approximately six months after the accident. The pictures show damage to the driver's side of the appellant's car.

Latosha Booker, the appellant's cousin, was with the appellant on the evening of February 6, 2005, before he went to the American Legion. The appellant drove her to the store and back home again. According to Ms. Booker the appellant was not drunk at the time. Ms. Booker later rode to the scene of the accident with her uncle and the appellant's sister. Ms. Booker stated that she saw the appellant get out of his car and that he was not walking or talking or acting like he was drunk.

The appellant took the stand in his own defense. He testified that, on the day of the incident, he went to work and then helped his girlfriend move. He stated that he drank a couple of beers earlier in the evening, including a twelve ounce beer and a twenty-four ounce beer, and then went to the American Legion. While at the club, the appellant did not drink anything. The appellant testified that he did not drink anything at the club because he had not eaten and was "straight" from the two beers he drank earlier. The appellant stated that he stayed at the club for approximately thirty minutes, then bought two beers to take home. When the appellant's car hit the other car, the beer spilled all over his clothes. According to the appellant, the other car scratched his car and then pulled off, tearing his car up. According to the appellant, no one put their hand on his window and no one yelled for him to stop.

When he arrived at the police station, the appellant claimed that he started crying because he felt like the police officers should have gone after the other car as well. The appellant also stated that he was shaking because he had a nerve problem. The appellant explained that he was listening to the police officers, but not really listening, and that is why he initially agreed to take the Breathalyzer test. The appellant did not remember the implied consent form, but acknowledged that it has his signature on it. Further, the appellant did not remember anyone explaining the form to him at the police station.

At the conclusion of the jury trial, the appellant was found guilty of second offense DUI and violating the implied consent law. As a result of his convictions, the trial court sentenced the appellant to eleven months and twenty-nine days in jail, to be served on unsupervised probation after the service of ninety days in incarceration. The appellant also lost driving privileges for two years.

On September 28, 2005, the appellant filed a timely motion for new trial, alleging that the evidence was insufficient to support his convictions, that the verdict was contrary to the evidence and that his sentence was excessive. The trial court denied the motion for new trial and the appellant subsequently filed a timely notice of appeal. On appeal, the appellant contends that the evidence was not sufficient to sustain his conviction for second offense DUI.

Analysis

On appeal, the appellant argues that the evidence was insufficient to support his conviction. Specifically, the appellant contends that "an analysis of the totality of the circumstances in this case shows that no objective trier of fact could have convicted him." The appellant argues that the testimony of the officers was contradicted by other witnesses and that the appellant performed no field sobriety tasks and refused the blood alcohol test. Thus, according to the appellant, the evidence was insufficient. The State counters that there was sufficient evidence presented for a rational trier of fact to convict the appellant of DUI second offense.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. State v. Odom, 928 S.W.2d 18, 23 (Tenn.1996).

Tennessee Code Annotated section 55-10-401 provides:

(a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

(2) The alcohol concentration in such person's blood or breath is eight-hundredths of one percent (.08%) or more.

In the case herein, viewing the testimony in the light most favorable to the State, the testimony at trial established that the appellant was in physical control of his car on a public road. Both officers observed the appellant's car hit another car and then continue on down the road prior to stopping. When the officers approached the car, they noticed that the appellant had beer on his person and in the car. There was a Heineken beer bottle inside the car that appeared to have spilled on the appellant and the car. The appellant admitted that he had been drinking beer that evening. According to the officers, they had to assist the appellant in walking to the police car because he was unsteady on his feet. Further, Officer Wright testified that the appellant's breath smelled like a mixture of alcohol and vomit. At the police station, the officers had to hold the appellant up in order to get his fingerprints. Officer Langley testified that in his opinion, the appellant was not able to walk or operate a car in a safe manner. Though there was some conflicting testimony as to the appellant's condition offered by family members of the appellant who came to the scene of the accident and the police station, the credibility of the witnesses was a determination to be made by the jury. There was sufficient evidence for the jury to find that the appellant was operating a vehicle on a public road while under the influence of an intoxicant. This issue has no merit.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE